Good morning everyone. We have two argued cases on the calendar for today and I understand that counsel are present for both. So the first case is number 21-1749, Loucks v. Commissioner. And we'll hear first from Mr. Gordon whenever you're ready. Thank you. May it please the court, counsel. This is a social security disability case. The issue is that the psychiatric impairment suffered by the plaintiff would not allow her to work consistently. Certainly they are not present 24-7, but it's the fact that they're chronic. And throughout the record, there is evidence which we have set forth that the plaintiff has the, in fact, even the ALJ indicates that the psychiatric symptoms, now he tried to downplay it. He said it only occurs at times. Well that's the whole point. The vocational expert said with the exact residual functional capacity that the administrative law judge gave both to the vocational expert and in his decision, that even if the person could do exactly that, that there would be absolutely no work if there were times that they couldn't. One day a month absence or 10% off task. And there are several issues here. One is that all of the sources say that there is absenteeism. The judge says it, that it will occur at times, and yet in his RFC he doesn't address it. He finds claimant can work consistently never, not even once. Can I ask a question that's extra record? Since this decision came down, has this petitioner found one of those thousands of jobs in the national economy that the vocational expert said existed? That is, is she working? I don't believe so. I'm not sure I spoke to her very recently. Certainly not at the time that we had filed this. But if somebody improves so they can work, then when it goes back, the judge would consider what's called a closed end period. That's a question that, your honor, I didn't pose. Because the issue is the ALJ's decision up to the point of the ALJ's decision. My memory is that she is not back to work, but that's- I would love to hear that because she had all these problems with showing up, with being well for more than two days in a row. She was taking a pharmacy load of drugs. All the doctors put her on more and more drugs. Right. And there's several times that the administrative law judge references a particular page. He cherry picks and finds, we note it in there, one in 2013, one in 2014, another one in 2016 where it appeared stable. But when you look at it, the psychiatrist each time is increasing the medicine. Exactly right. Yeah. Increasing the medicine or saying she thinks- this is a person with severe psychiatric issues. She thinks she's doing well. I, the psychiatrist, don't. And then in between this one time that the judge, the administrative law judge mentions in 13, one time in 14, one time in 16, there's all these records of the times that she's worse. And, again, you have to look at it in the context of would the person miss one day a month? Would the person be off task 10%? And, as I said, everybody, the psychiatrist says yes. Now, the psychiatrist's opinion, as counsel has pointed out, was for the period immediately preceding the filing. But it doesn't make any difference. We set forth in our reply brief that it's the chronic-it's the entire period. And that shows throughout the entire period. And even the consulting physician, who actually saw the plaintiff, indicates up to marked impairment maintaining a regular schedule. Now, the non-examiner, who never looked at or at least never commented on one single piece of evidence in this entire file, other than the consultative report, said that it's only moderate. But even only moderate, they're still, like the judge says, at times that she would not be able to work. We think it's way more than 10% and one day. But, in any event, it doesn't have to be. That's all it has to be. And the ALJ never considers it. We go into great detail on the issues of supportability and consistency. And that's the new regulations. And here, all the ALJ does is give a one sentence, I find they are consistent. No explanation. No how are they consistent. And, in fact, they couldn't be. Because the non-examiner, and without the non-examiner, there's absolutely nothing that the commissioner has. The non-examiner cites nothing. Cites absolutely nothing. It's similar to Stacy Ipse Dixit. And that's been brought forward in several other cases, most recently in the Colgan case, which was actually published. That was, and in that, they talk about, that was also a concussion case. But they talk about the non-examining psychiatrist and the fact that, several things. One is they say, all he has is a checkbox. The administrative law judge complains about the checkbox of the treating physician. And the administrative law judge is wrong, because you have to look at all the records. But, on the other hand, that's what the non-examiner does, and the ALJ has to be even-handed. But he never even mentions that that's what it is. And there's no evidence as to either supportability or consistency, other than the bold statement at the end. In terms of the commissioner does cite that the claimant, at times, is not compliant with medication and not compliant with her appointments. That shows that she couldn't stay on task. And the psychiatrists themselves, they say she is doing her best, but due to the neurocognitive problems that she has, she does a lousy job. And then there are other times where her roommate says that she was taking the medication and it made her sicker than a dog, so she stopped that one. But each time, there are reasons for all of this that we think support our application. I probably have about five more minutes to go, but I have 35 seconds, so I think I'll end it, if that's okay. Thank you. You reserved a couple minutes for rebuttal. I reserved three. Thank you. Thank you. Ms. Zoltan. May it please the Court. Appellant argues that the ALJ's RFC is not supported by substantial evidence and argues that the RFC finding failed to account for the amount of time that she would be off task or absent due to her symptoms. Appellant specifically argued that there's no opinion in the record that supports her ability to stay on task or maintain attendance. However, there is an opinion in the record that does indeed support the ALJ's finding. You really have to go look to find that one opinion that says that, though, don't you? I mean, there's lots of stuff that says she's not going to be able to do this, and yet you pick, it's called cherry picking, the one opinion that says, yes, she'll try. Well, the ALJ actually relied on the opinion that was most consistent with the longitudinal record and with other evidence in the record. So Dr. Hoffman first based his opinion on a review of the record. Notably, Dr. Hoffman's opinion is supported by clinical findings in the record. So appellant was seeing a psychiatrist and therapist throughout the relevant period, and these treating sources generally found fair attention and concentration, coherent and logical thoughts, ability to respond to direct questions, cooperative and appropriate behavior, no more than mildly impaired memory, and average intelligence. They kept upping her drug dose, didn't they, Dr. Danes? They adjusted her. Could they have more and more drugs to keep her in that condition? They adjusted her medication based on her responses to her medication. So they kept increasing it, though when you say adjusted, they never decreased it. They only increased it. I believe at times they changed her medication. I believe at times they adjusted. I think at one point they were tinkering with her dosage of Seroquel. She self-adjusted her medication. She said it made her sick after a while. I mean, if that's what you have to do to get a job, you have to take drugs that make you sick. There's something wrong with the system. Appellant also advised that her drugs were effective in managing her symptoms. I believe starting especially in November 2016, she started reporting improvement with treatment. She stated on several occasions that her medication was working well. I believe it was in June 2017, that's at 624 of the record, she stated that she was able to focus better. So Appellant, even though her doctor was tinkering with her medication, she was reporting improvement with her medication, and she was doing quite well with her medication. She was reporting a reduction in her symptoms. She was reporting performing a range of activities. She reported that she was working part-time. So even though her psychiatrist was adjusting her medications, it seemed to be working well for her. And notably, a lot of this improvement occurred around the exact same time that she applied for benefits. It seems, though, that the ALJ didn't make supportability and consistency findings for the Hoffman opinion. Is that right? Well, we believe that the ALJ did discuss and did make these findings. First, the ALJ explicitly noted that Dr. Hoffman's opinion was consistent with the record. And elsewhere in the decision, the ALJ went through the clinical findings, the activities of daily living, the part-time work activity. With respect to supportability, supportability is defined in the regulations as the extent to which the opining source cites to objective clinical findings or provides an explanation in support of his or her opinion. Here, Dr. Hoffman provided a narrative explanation in support of his opinion. Notably, Dr. Hoffman noted the fact that Appellant was learning anger management skills with her treating therapist. Now, the ALJ took a look at the record, took a look at Dr. Hoffman's narrative explanation, and noted that the record showed irritability, some findings of impulsivity, and therefore concluded that the narrative explanation didn't fully support Dr. Hoffman's opinion with respect to Appellant's social functioning. Dr. Hoffman noted that she was able to relate appropriately with others and suggested that she might benefit from less frequent interaction with the public. But the ALJ found that Dr. Hoffman's explanation and the record as a whole indicated that she required further social restrictions. So most of what you just described is about the evidence itself and not about the supportability and consistency of it. And I guess that's what I'm asking about, is without that, what are we supposed to do? Well, Dr. Hoffman did touch on this in his narrative explanation. I would also note that just recently, the Ninth Circuit in the Woods case, and we referred to the Woods case in our 28-J letter. In the Woods case, the Woods case was interesting. The panel affirmed the ALJ's decision, and notably in the Woods case, there was an opinion, and the Ninth Circuit noted that in that case, the ALJ, quote, did not intend to make a supportability finding. However, the ALJ made a consistency finding that was supported by substantial evidence in the record, and the Woods panel went on to affirm the ALJ's decision. And we believe that the Woods panel got it right at the Ninth Circuit. Nevertheless, we still feel here that the ALJ did properly consider the factors in evaluating Dr. Hoffman's opinion, and that if you look towards Dr. Hoffman's narrative explanation, it does not fully support Dr. Hoffman's opinion with respect to social functioning. However, it does support Dr. Hoffman's opinion with respect to the other areas of mental functioning. So now shifting back to, if you don't mind, some of the things that Appellant also mentioned, I'll note that Dr. Hoffman reviewed the record, including Dr. Slowick's opinion, and opines that the claimant would have no limitations maintaining, or would not significantly limit it in her ability to maintain a regular schedule. Additionally, is that consistent, though, with the opinions of those other doctors as to her workability? Because it seems as if the doctors whose records Dr. Hoffman was reviewing and who the ALJ discounted do present a fairly strong picture that she actually would not be able to regularly and consistently work. And it seems like the ALJ, as Judge Pooler alluded to before, sort of picks and chooses parts of the record to make these determinations that, in fact, she would be able to work. Well, the ALJ cited substantial evidence in support of his opinion that she was able to work. As I mentioned before, the ALJ noted that the clinical findings throughout the record were generally relatively normal. At most, they were mild abnormalities. Is it really, though? I mean, earlier you were listing some of the traits, and you said things you referred to, judgment and coherence and things of that sort that certainly go to she's a functioning adult. She's not hospitalized. She's not in a vegetative state. But to be able to work consistently requires more than being able to be coherent and sort of understanding an adult. Well, I'll also note that, first of all, the ALJ did recognize that there were certainly several abnormalities in the record. The ALJ noted that there were findings of irritability, noted findings of impulsivity, and the ALJ's RFC finding is really pretty restrictive. So the ALJ limited Appellant to simple tasks. He limited her to no assembly line paced work, which accounts for her fair attention and concentration. The ALJ limited her to simple decisions. The ALJ limited her to no more than occasional changes. And the ALJ limited her to occasional interaction with coworkers and very rare interaction with the public. So this is a very, very restrictive RFC finding that does account for these findings in the record. The ALJ didn't look at this record and say that this was a perfectly functional individual. He recognized that there were some difficulties and some symptoms, and he accounted for that in the RFC finding. And that RFC finding is supported by Dr. Hoffman's opinion. It's supported by the clinical findings. It's supported by her activities of daily living. She's attending fundraisers. She's socializing with others. She's able to maintain enough attention and concentration to read, to play games on her phone. And the ALJ noted that throughout the record, she is reporting improvement with her treatment, and it was therefore reasonable for the ALJ to rely on all of this evidence as a whole and to conclude that the opinions from Dr. Deans and from Ms. Warner were outliers in the record. This is consistent with some recent holdings from this court. Notably, last year in Curry, this court said an RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. And then just last month, this court reiterated in Shillow that the ALJ bears the final responsibility for making RFC determinations, and it follows that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence. The Supreme Court mentioned in Bistek v. Berryhill that the substantial evidence standard of review is a very differential standard. Also, did you just say that Dr. Deans was an outlier? Did you just say that? Dr. Deans' opinion. In fact, his opinions were inconsistent with each other. He saw her for four years. Correct, but the ALJ considered Dr. Deans' opinion in the context of... He's the one that saw her from beginning to end of this period when she was claiming disability. Isn't that correct? That is correct. And so he just ignored it and said, this opinion doesn't comport with the opinion I like better? No, the ALJ considered Dr. Deans' opinions in the context of Dr. Deans' treatment notes, and he noted that there were stark inconsistencies, that's a quote from the ALJ's opinion, between the treatment notes and the opinion. So he didn't simply ignore the opinions. He noted that they were outliers when compared with Dr. Deans' longitudinal record, which showed improvement with treatment and medication, which described a range of activities, and which showed mild... It seems to me that she was just as bad at the end of the time she was seeing him as when she started. The only difference was they kept pumping her with more and more drugs. But she had the same complaints at the end as at the beginning. However, the appellant is actually reporting... Is that correct? Do you agree that that's correct? I respectfully disagree. I note that the appellant is reporting improvement with her medication. She's stating that her medications are working well. Sometimes improvement, but sometimes not so much. But towards 2017, so in November 2016, the note says, patient continues to think her current psychiatric medication regimen is working adequately for her without side effects. Her depression is under good control. In January 2017, there's a similar note. In April 2017, Dr. Deans notes that the medications are working well. In June 2017, the note states that appellant thinks Prozac is working for her depression and anxiety, but even more so, she feels more focused and organized and her confidence has improved. In August 2017, the note states that her depression and anxiety are under control. In December 2017, her depression and anxiety continue to be under adequate control. She still has depression and anxiety and reports that to the doctor. Whether she sees him every two weeks or every two months or longer, she still has it. That is correct. Depression and anxiety. Correct, but the ultimate determination for the ALJ is not whether she has these diagnoses. And the ALJ acknowledges that she has depression and anxiety and that it does cause certain symptoms and certain limitations. However, the ultimate question is whether she's still able to work despite these diagnoses. And here, the record as a whole is showing some abnormalities, but relatively mild abnormalities. And it was therefore reasonable for the ALJ to conclude that this individual was able to perform a very narrow range of simple work despite her depression and anxiety. The Social Security Administration does not take responsibility for helping her find a job within our RFC, right? They don't help her go to a place and say, listen, I can do this job, but I need regular bathroom breaks. And I can't be too close to my co-workers, and I can't deal with the general public, but I'm willing to work. Does Social Security Administration help her do that? I assume no. The determination for the agency is whether or not she's disabled. I understand what the agency's job is. Do you think she's going to find work? Ultimately, it's for the ALJ to decide whether she's capable of performing work. I'm just asking, do you think the woman presenting with that RFC is actually going to find work? That's all. Yes or no? Well, based on the vocational expert's testimony, there is work in the national economy that an individual with this RFC is able to perform. Do you think this woman is going to be able to find work? So based on the, I think the ALJ's RFC was reasonable, and the vocational expert testified that an individual with this RFC finding would be able to perform the three identified jobs in the national economy. All right. You still didn't answer my question, but you can go on. I think the time is up, though. If I could just sum up for a minute. You can briefly wrap up, yeah. Okay. Thank you. So our position remains the same, that the ALJ's RFC was supported by the clinical findings, by Dr. Hoffman's opinion, by her activities of daily living, by reports throughout the record of improvement with treatment, and Dr. Hoffman's opinion directly supports the claimant's ability to maintain consistent employment. Thank you. Thank you, Counsel. Mr. Gordon, you have reserved three minutes. Thank you, Your Honors, and I don't think I'll need all three minutes, but let me touch very briefly. Let me get to the mic. Sorry. Let me touch very briefly on a couple of things. First, on a couple of the cases. Shillow, the first sentence, fact specific, there were none in Shillow, and that's why that was decided that way, and that's why this court found it that way. That's completely different. I don't think you want me to reread all of the evidence we set forth on pages 25, 26, 27. Unpredictable impulse control, suicidal statements, can't follow her thinking one way or the other, no coping skills, volatile and unpredictable, inability to make decisions, racing thoughts, on and on. That was the first paragraph of three pages of the decision, of the complaints. It is amazing that the commissioner says, well, look, the claimant said she was getting better. The claimant has psychiatric issues. The psychiatrist said claimant thinks she is getting better. She is not, and increased the medication. And why is it that they don't accept what the claimant says when she claims that she can't work? Only when she says, oh, gee, I think I'm getting better. And the psychiatrist says, it is not happening. You have no good judgment. And again, just as they said, are there some periods? Yeah, there are some periods where she might be able to work, and even part time. That's not the issue. As the commissioner said, it was a very extensive RFC. And with that RFC and zero time off task and zero absences, there would be jobs. But no jobs with that exact same RFC if the claimant was off task or absent. Let me see what else I said. Oh, the activities. Colgan really set forth, which was published just in 2022, 22F4353 from this court. The activities have to show that she would be able to work consistently, not, you know, whatever it is. I go to church once a month, or I play with my child, or whatever it is. Because you gamely try, but unless it shows that you can work consistently, it doesn't. And finally, again, going back to Hoffman, because without Hoffman, they've got nothing. Hoffman references that he got records. The only record that he cites in terms of supporting his conclusions, which never have an explanation. You have to have consistency, and you have to have the supportability. All he does is give a conclusion, and the only record he cites is the non-examiner, who finds up to marked impairments. So, and all the rest of the arguments, which we set forth in our reply brief, they're not arguments that the judge gave, they're post hoc arguments. And I compliment the commissioner, but they're post hoc arguments. Thank you, your honors. Thank you both. We'll take the case under advisement.